Judge Batey and I would like to welcome and to thank Judge Moskowitz, a district judge here visiting, helping us out. Welcome and thank you, glad to have you. We've got four cases this morning. I anticipate we'll hear two, then we'll take a break, and then we'll come back and hear the remaining two. The first case on the calendar this morning, Rosales v. Dutschke, when you're ready, counsel. May it please the court, Patrick Webb appearing on behalf of the appellants, the Rosales and Dutschke.  The Rosales and Dutschke case is a case of unconstitutional desecration and conversion of their family's remains. No, you say unconstitutional. What constitutional provision? I thought this was a statutory claim. It includes the constitutional violations under the First Amendment, the Free Exercise Clause, and the Fifth Amendment, a taking without just compensation and due process, as well as the NAGPRA claims, the statutory claims under the Administrative Procedure Act, Your Honor. Judge Mueller's dismissal of those claims should be reversed for two reasons. The first and primary one is that the Pamul Indian Village, referred to in all the briefs as the JIV, is not a necessary, required, or indispensable party because they've irrevocably waived any claim in the subject matter of what remains in this lawsuit. As Your Honor knows from looking at the briefs, things have changed dramatically since this case was originally filed, and there are certain claims that Judge Mueller focused on that are no longer in the complaint and are clearly abandoned as we set forth listing them in the reply brief. Those sentences involved whether the tribe had any land, whether it was recognized, none of those claims are before you anymore. The only issue now is what to do about the human remains. They are not on federal or tribal property anymore. They are beneath a state highway down at the Mexican border where they were trucked and dumped. That's the allegation? That's correct, Your Honor. And since no answer has yet been filed, the motions were under 12b-6 before the answer was filed. You need to assume that those are true. No, we understand that. Under Iqbal, we view all plausible claims pled with sufficient particularity as true for this purpose. We got it. But you filed several amended complaints, and you never amended your complaint to remove those allegations, did you? No, not yet, Your Honor. It was done on the appeal. Once, keep in mind that we were only appealing the issue of indispensability and whether the individual non-federal defendants had sovereign immunity. That's in the main opening brief. But in response to the motion to dismiss, did you attempt to amend your complaint to remove those allegations? We tried to make it clear that those allegations were not predicate acts. Between the difference between standing before Judge Mueller and making that argument and filing the reply brief, we decided to make it absolutely clear and remove those claims. We did not do that before we made the argument on the motion to dismiss before Judge Mueller. Didn't think we had to because they are not predicate acts to the claims that we're making under NAGPRA, First Amendment, and Fifth Amendment. OK. I've got in the Third Amendment complaint is the most recent complaint filed. Correct. What in that complaint now is viable? I've got the complaint here in front of me. That's correct, Your Honor. Everything except what's in paragraph 12, 13, 22, 33, 34, 56, 52, and 53 for the record. You're talking too fast. Say that again. Certainly. These are the non-viable paragraphs. Just read them off again. I'll write them. If you'd prefer, Your Honor, you could look at the reply brief at page 24 where we've listed. Just read them off. I'll write them. Certainly. OK. 20. Start with 12. Excuse me, 12, 13, 22, 33, 34, 50, 52, and 53. So those are, in effect, gone. The rest remains. Let me be clear, Your Honor. There are certain sentences in those paragraphs that are excised. They're listed at page 24 of our reply brief. And they are these three sentences that Judge Mueller focused on, whether the JIV is a federally recognized tribe or not, whether the cemetery are Indian lands or not, and whether the non-federal defendants violated the compact or not. Those issues are not before you any longer, because we're not seeking any remedies that would have any effect on how the JIV wants to operate itself, make policy, make any. OK. Got it. So what's your allegation with respect to the individually sued, in individual capacity, tribal defendants? What did they do that you're basing your cause of action on? Primarily, Your Honor, NAGPRA is set up. The Native American Grave Protection Act is set up to have both the federal land managers in this particular situation, as well as the non-federal defendants, abide by what NAGPRA says. OK. But I'm asking you, what do you say that they did that was wrong? Intentionally removed the human remains from where they were originally interred, without consent, without notice to our clients. Did they do it personally, themselves? One of the three has admitted in his declaration, Mr. Meza, to have supervised directly the removing of. Where in the complaint is that alleged? Because we're not talking evidence, we're talking complaints. So where in the complaint are you alleging behavior by the individuals that creates liability? We have listed the behavior, Your Honor, because it applies both to the federal defendants, as well as the non-federal defendants, in all of the paragraphs at pages in the excerpt of record at 46 and 47. Well, wait a minute. What would be helpful is if you could give us the paragraph numbers from the third amended complaint. Can you run through that and identify where we can find these allegations? Certainly, Your Honor. Paragraph 33. Hang on a second. I'm at paragraph 33. Where is the specific allegation as to behavior by the individual defendants? Hang on one second, Your Honor. And also, this is a paragraph you identified as no longer being relevant. So is it part of this paragraph is at issue, and part of it is not? I'm sorry. I'm not sure I understood the beginning part of your question, Your Honor. Let me move the microphone. OK. So when you ran through a list of paragraphs that were no longer at issue, that included paragraph 33. But now you're identifying paragraph 33 as containing the allegations against the individual defendants. The issue in paragraph 33 that is no longer there is any reference to whether the JIV properly has the property, exercises control over the property. So that is what has been removed from 33. What's left in 33 are the basic allegations that there was an intentional excavation, commingling of the remains, without consent, and just compensation without the required permits. OK. Now, back to my question. I mean, we're working here in tandem. So where is their allegation with respect to the individual defendants is what they did in this paragraph? The reference is to all of the defendants there, Your Honor, not called out by name. They are called out by name in the earlier paragraph. OK. So all of the defendants did what, then? I'm just, just give me the allegations. Just point me to the language in this paragraph. I believe Your Honor asked originally about the non-federal, so let me address them first. The non-federal defendants. Stick with the non-federal. So where's the allegation in this paragraph that they did what? That they intentionally excavated and commingled the remains without giving notice to our side, without sitting down with the feds. Wait a minute. That they did that themselves personally? That's what the allegation is, Your Honor. I find that under Iqbal not plausible, that they themselves were out digging. Is that what you're saying, that they themselves operated the back hole? The beginning of our investigation just demonstrated that when Mr. Mazza came forward and said he was out on the bulldozers supervising the actual removal of remains. But that's not here. That's not in the complaint, Your Honor. That was discovered after we filed the complaint. But you didn't amend the complaint to include more specific allegations? I mean, this is what we have, right? Well, under the Wineman Wintu case, Your Honor, Judge Mueller shouldn't have dismissed without giving us an opportunity to amend if she thought that we could properly allege this. We thought once the non-federal defendants put in 150 pages of what we thought was extraneous material, we had the right to then convert the 12B6 motion to a 56 motion for summary judgment and deal with it in terms of summary judgment. And so we then used Mr. Mazza's declaration where he admits to having supervised this activity and been out there actually on one of the bulldozers in response. So we did not think we had to seek an amendment before the motion to dismiss was ruled upon, given the fact that the non-federal defendants had put so much extraneous material outside the face of the complaint. So now if the judge was going to be looking at any factual allegations that either side had made, all we had to do was be able to point to those factual allegations. So our complaint states the cause of action. The further discovery in Mr. Mazza's declaration have elaborated upon that, and I believe provides ample authority for finding that there were intentional excavation and commingling of the remains. I don't have the ER, the excerpts of record here in front of me. Where on the ER will I find Mr. Mazza's declaration or the evidence that you're now relying on? One second, Your Honor. Mr. Mazza's declaration is at, and the pages I'm referring to are 33 and 34. Of the ER? Of the ER, Your Honor. ER, OK. Turning back to the amendment issue, you were on your third amendment complaint. You had a motion to dismiss. I couldn't find anywhere in the district court docket that you had filed a motion seeking leave to file a further amendment in response to the motion to dismiss. And also it appeared that although the transcript was ordered, there was no follow up, and that was abandoned. So we don't have a transcript of that hearing. So did you make an oral motion to amend the third amended complaint before Judge Miller? Yes, we did, Your Honor. And what did you say to Judge Miller, to the best of your recollection? Just calling to Her Honor's attention under Wynnum and Wintou that leave to amend would be appropriate if she thought that factual allegations were not sufficiently specific. We thought they were because we had obviously put in Mr. Mazza's declaration. OK, and now do we have anything as any of the other defendants, either tribal or non-tribal, as to what they personally did? Ms. Chamberlain and Ms. Pinto were the supervisors of Mr. Mazza according to their declarations, and their declarations are also part of the record, Your Honor. OK, now do you have anything other than paragraph 33 in terms of what the individual defendants did? I believe 33 is the best summary in the complaint itself, Your Honor, because it goes through the six major things that NAGPRA would require both the federal defendants and the non-federal defendants to do. You can't intentionally decide to go dig up remains. No, I'm not interested for the moment in what the law says. I'm interested in what you allege that the defendants did. And you're telling me the best you've got here is paragraph 33. Correct, Your Honor, because the statute's very specific, and we believe that they very specifically violated those six provisions. Actually, it's 46 different provisions of the act and the regulations, but we've organized them into the six claims in paragraph 33. But of course, what you or I might believe doesn't matter. What matters is what's in the complaint. That's correct, and we believe we're quoting directly from what the regulations on NAGPRA say, and that's what we said those defendants did, failed to do. Now, you are bringing individual capacity claims against these defendants. They were acting as officers of the tribe. How do you respond to the argument or the suggestion that these defendants are really just proxies for the tribe? Because what you're challenging is the tribe's actions in excavating and building the casino, and that these officers were acting on behalf of the tribe and carrying out those activities. If I'm understanding your question, Your Honor, we are not suggesting that the tribe did this at all. In fact, Ms. Pinto's declaration as the chairwoman at the time claims that the JIV had no knowledge of where any of the remains were actually located, and Mr. Mazza took it upon himself to do this. So Mr. Mazza's acts in violation of NAGPRA are not the acts of the tribe. They are his personal acts. He's only been sued personally, as Ms. Pinto and Ms. Chamberlain have been sued. OK, now, is that laid out anywhere in this complaint to explain how these individuals were not acting as tribal officers, not acting in that capacity? Yes, in the initial paragraphs talking about who the different defendants are, paragraphs 11 refer to Mazza, Chamberlain, and Pinto and their relationships being sued individually, not because they were necessarily officers of the tribe. Now, we recognize that they were officers of the tribe, but as soon as they are violating the federal statutes. But wait, we have to look beyond your characterization of whether they're being sued in an individual or official capacity. So all that you say here is that they were officers of the tribe and they're being sued in their individual capacity. There's no specific allegations that I can see here to show why they weren't acting in their official capacity. That's how it is demonstrated in paragraph 33, where we go through the very specific six general areas of NAGPRA that were not followed, where they failed to follow those. As soon as you are not following federal law, you are acting outside the course and scope of your capacity as an officer of the tribe. The most important thing that this circuit has said three times, the last three times this circuit has looked at the issue, in the Maxwell case, the Pistor case, and on October 2 of this year in the JW Gaming case, the issue is the remedy sought. If we only seek the remedy against the individuals and seek nothing to do with the JIV, there is no sovereign immunity that would apply to those individuals. And under the Thorpe against Burrow of Jim Thorpe case, there is no protectable interest under NAGPRA because the JIV has no protectable interest in the human remains, only the lineal descendants. Now, we're taking you over, but please don't. We'll give you a chance to respond. So far, I've been asking you your allegations in the complaint with respect to the tribal defendants. Where are the allegations of individual wrongdoing by the federal defendants? In the same paragraphs, Your Honor. That's why I began by saying, OK, do you have anything other than they just didn't act? I mean, here you've got, you say, Mazza, if I'm going to go back and look, Mazza himself says I was out there supervising the bulldozers. Do you have anything like that that you would amend to say, here's what the federal defendants did. They were out there. They were supervising. Or is it just general failure of duty? What are you going to be able to allege? Not a general failure of duty. It's a very specific duty. OK, what are you going to allege specifically with respect to those defendants, if allowed to amend? We will be alleging the violations. No, what did they do? They failed to provide our client's notice. They failed to get our client's consent. They failed to have an ARPA permit under the Archaeological Resources Act. And you have to have that permit. They did not seek an order from the California Superior Court because you were moving human remains from one district to another district in the state of California. And those are all obligations on the federal defendants? Yes, Your Honor. They apply both to the federal defendants and the non-federal defendants. It's just the federal defendants have the obligation because they're the federal land managers to see that these things didn't happen on what's either federal land or tribal land before the remains were removed. But as soon as the allegation is that there's an obligation under federal law to do something and the person didn't do it, that starts to move me away from an inability to think about this as a so-called constitutional or statutory tort. This sounds like it was a duty that was imposed upon them on their official capacity. They didn't do it. I'm less certain that that gives you a cause of action against them individually. As Your Honor knows, under the Administrative Procedure Act, that's how you get to the NAGPRA claims when there's a failure to do what the statute and the regs very specifically require. I understand that perfectly. But the problem is, when you're suing a state, local, federal, or tribal officer in his or her individual capacity, you've got to show somehow that it's a tort-like activity. Merely pleading in the individual capacity is not in itself sufficient. That is to say, there's some things done in the individual. If you sue in the individual capacity, sorry, sovereign immunity protects. I refer you, for example, to Edelman versus Jordan, where the allegation is that the state officials did not timely process application under a federal statute. And the court says, sorry, even though you sued in the individual capacity, that's a suit against the sovereign. So merely saying individual capacity doesn't necessarily get you there. That's correct, Your Honor. And Justice Sotomayor, in the Lewis against Clark case points that out, as Your Honors, the other panel did in the Maxwell case. But you have to look under the Maxwell addition to this area of whether the sovereign immunity applies to the individuals. You have to look at the remedy to see whether the remedy is only being sought against the individuals. And if so, then that ends the discussion. No, it does not. Why don't we hear from the others? That is to say, if the suit had been brought in Edelman versus Jordan against the individuals and said, I only want money out of the state officials who did not timely process the applications, that was not going to save that lawsuit. So it's not a question only of what the remedy is. The question is, what's the violation for which the remedy is sought? I agree with that, Your Honor. The difference in that case is what wasn't done wasn't specifically required to be done, as is specifically required here. No, I'm afraid it was very specifically required under the statute. It had to be required. The applications had to be processed within 30 days or 45 days. They weren't. And damages were sought for the delay. Why don't we hear from the other side? And we'll give you a chance to respond, even though we've taken you over. Thank you very much, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Corinne Snow for the United States. I'll be splitting time this morning with Mr. Lawrence, who will take the last five minutes on behalf of the federal, the tribal appellees. So you've got 10. He's got five. Yes, Your Honor. I've got 10. He's got five. And if you could please keep your voice up. Yes, Your Honor. I'd like to start with the changes that the appellants have decided to make on reply to their complaint and to the relief they're seeking. Because I don't think it changes the Rule 19 analysis at all, but it does mean that several of the other claims they bring are no longer viable. So the reason it doesn't change the Rule 19 analysis is because under NAGPRA and with regard to all of their other claims, there has to be an initial determination by the court of whether these allegations happened on federal or tribal land. And those are defined under NAGPRA as being mutually exclusive of one another. And there are only responsibilities for the federal appellants if the allegations took place on federal and not tribal land. Now, that initial determination. Is there an allegation in the complaint as to where these were, federal or tribal? They talk about the parcels where the allegations took place. They talk about several different parcels. Those parcels are all either Indian trust lands that are held in trust by the United States for the tribe, or there is one parcel that is now held in fee by the tribe. But none of these are federal lands. Is that ownership interest ascertainable from the complaint, what you're now saying about whether these are tribal lands or non-tribal lands? No, Your Honor. It's a little bit vague from the complaint, although they do cite some specific parcel numbers. And those parcel numbers can then be tied into specific county records. And they've included in the ER some title decisions. There's a map at ER 74 that I think helps explain what these different parcels are. But the important thing is that they can't be both federal and tribal land. As NAGPRA has it defined, the two are mutually exclusive because federal land is specifically defined as land under the control of the United States other than tribal land. Let me make sure I understand it. Your argument is that even if it is true that remains were removed, and even if it is true that they were remains protected under the statute, because they were removed from tribal lands, there's no obligation violated by the federal defendants. That's the argument? That's correct. Instead, the obligation would be on tribal officials. This is under the NAGPRA regulations at 43 CFR. Right. And so your allegation is there's nothing in the complaint alleging that this was on federal land. It's that. And in order to even make a determination about whether or not the federal appellants would have any liability here, this court, the district court, would necessarily have to decide something that involves the tribe's rights to its property, whether or not it was tribal or, in fact, federal land. Maybe I just got confused. Let me say what I said before, and you can respond. Under your description of the statute, the federal defendants have no obligation if the remains were on tribal lands. That's correct, Your Honor. And I'm asking you then, well, is the complaint deficient, then, in that it fails to allege that these parcels were federal land? There would have to be an allegation that it was federal land and not tribal land. And I don't see such an allegation. Yes, Your Honor, that's correct. I don't know why you need 10 minutes. Well, there was, at the outset of your remarks, I thought I understood you to say that if plaintiffs abandon claims on appeal, and they are specifically abandoning the claim that remains were excavated from tribal land, that that undercuts some of their claims. So if they're abandoning, or rather, it was the opposite. They were arguing that these were not tribal lands, because the tribe didn't have sovereign immunity, so it couldn't have tribal lands. OK, so when they abandon that argument on appeal, what is your understanding of what claim remains? Are they now suggesting these are federal lands? So no, Your Honor, let me clarify what I was saying. What they've abandoned, because they think it removes the 19 issues, are all of the injunctive relief in terms of returning these remains to the tribal land. That doesn't solve the Rule 19 issue, but because they're giving up all of that injunctive relief and now just seeking monetary damages and injunctive relief related to leaving something on state property that none of the parties before the court have control over, monetary damages aren't available under either the APA or NAGPRA. The monetary damages are available under the Federal Tort Claims Act and under Bivens, but under those two statutes, they have failed to state a claim on which relief can be granted. So essentially, by giving up that injunctive relief on appeal, they have made their NAGPRA claims, their APA claims, non-viable, because there is no relief that this court could grant. With regard to their Federal Tort Claims Act or Bivens where there could be monetary damages, starting with the FTCA, they haven't complied with any of the procedural requirements that are a necessary prerequisite for the waiver of sovereign immunity. So the Supreme Court has been clear in McNeil that the most important date is when an action commences, which is when the complaint is filed. And that has to occur after a claim has been denied, which if there is no action by the agency, as there has been no formal denial here because the agency never received a claim, would be six months. So even taking all of their allegations as true, even assuming that they had actually filed their Form 95 in September of 2015, that's still after they filed their suit in May of 2015. So they failed to comply with the requirements of the statute. And they can't receive any of the damages that they're seeking under the FTCA. Bivens, likewise, they have failed to state a claim. Again, there are not specific allegations about ways in which either of the federal appellants have actually violated their constitutional rights. Even if there were, here we have another statutory scheme, NAGPRA, which is meant to deal with situations where the lineal descendants of Native Americans want to have the remains for their family. Just because it doesn't provide the relief that they'd like here doesn't mean that it's not the alternative scheme that Congress has provided. So as a result, none of their claims remain viable. This court can either affirm on the Rule 19 grounds because the district court did not abuse its discretion in ruling on those grounds. Or, as I've said, there's a number of additional grounds with regard to the federal appellants that this court could also affirm on. And if the court has no further questions, then I'll turn it over to Mr. Lawrence. OK. Thank you. Good morning. And may it please the court, my name is Frank Lawrence. I represent the tribally related defendants in the case. The district court's Rule 19 decision is very well supported in the record. This court came to the same conclusion in 2003 with Judge Fletcher on that per curiam opinion, that this is a federally recognized tribe. I've got a really good short-term memory. Short-term to find is about two days. I understand, Your Honor. 73 federal appendix. 2003, I have no memory. It's a 2003 case, Your Honor. 73 fed appendix, 913. And the court held that the Humboldt Indian village was a necessary party under Rule 19 in that case, which was the same plaintiff's lawyer and the same plaintiff's against the United States, that the tribe had claimed jurisdiction over the land at issue since at least 1981. Same property at issue here. The village enjoys sovereign immunity from suit and cannot be forced to join the case without its consent. The village is also an indispensable party. So this issue was litigated and fully resolved 16 years ago. But one issue has. What about the issue that, let us say that, just for purposes of argument, you don't need to concede. But for purposes of argument, Mr. Meza was on site supervising the excavation. And as alleged in the complaint, again, you don't have to concede the truth of it, Indian remains were removed. And they were removed illegally. What then? Well, there's a number of issues, Your Honor, in your question. Mr. Meza's declaration was filed in another lawsuit. Oh, no, I'm just asking you. Assume that it's in the record in this case, which it's not. Assume it says what counsel said. Assume that it's in the complaint, which at the moment it is not. It is not. And. It's not in the record in this case also. But what then? Well, the answer to that is that he was acting in his official capacity as a tribal official. He was the cultural site monitor. So under the tribe, Congress passed the Indian Gaming Regulatory Act. It said tribes can have a casino. You have to negotiate a compact with the state you're in. The tribal state compact requires the tribe have an environmental review ordinance akin to CEQA in California or NEPA on the federal side. So that's a requirement of the compact. The tribe has an environmental review ordinance. It requires, among many other things, that there be. We're off on a different path, one I'm interested in at the moment. Let's assume that it was illegal to assume that there were Indian remains that were being removed during the construction of the casino, and it was illegal to do so. Under the statute. And Mr. Mazza was there supervising. So as a tribal official, carrying out tribal, state, and federal law, he was acting in his official capacity. But the allegation is, and I'm asking you for the moment to accept it as true, what was happening was illegal under federal law. Well, there's no way under these allegations we can tell what they're alleging. For it to be illegal, it would have to be. What is it illegal under? NAGPRA? Does NAGPRA apply? Well, I'm asking. We don't know. The district court judge dismissed an earlier complaint under Rule 8 because it was vague and unintelligible. And she warned the plaintiff. She said, when you amend again, you need to be very clear in your allegations. And they filed this third amended complaint, which, as the court has seen, is hopelessly vague. We don't know who did what where, or when, or to whom. But you're so far not answering my question, it may not be answerable in the form I asked it. But let me try again. The statute forbids the removal of Indian remains without fairly elaborate protocols and permissions. Such protocols and permissions were not obtained. Now, you're alleging, of course, that there were no Indian remains removed. There was no allegation of an actual discovery in the complaint. In NAGPRA, you either have unintentional discovery or intentional discovery. Let me set this out, because I think you've got lots of defenses. But I want to ask this question, and I want your answer on the assumptions that I'm giving you. The assumptions that I'm giving you are, this was on tribal land. There were Indian remains on tribal lands. The Indian remains were taken from tribal lands without authorization, without permission, and removed and dumped somewhere, wherever they say they were removed. And that one of the defendants was there supervising. Was there a violation of law at that point? And I am not asking you to concede the truth of anything you just said. I don't. A tribal, if the person, if the cultural monitor observing the excavation of a construction project is acting in that capacity, they're acting under governmental authority of the tribe. But that's not the question. So if an individual, if an individual. But that's not the question I asked. I didn't ask under what authority they're acting. I'm asking, was the law violated? Well, Your Honor, it's a hypothetical that assumes so many things that aren't in this case. I don't think I can answer your question. Why not? Because I'm just asking you to assume. I'm not asking you to concede. In preparing for today, Your Honor, I looked at the allegations in the complaint. I looked at the district court opinion. I looked at the record in this case. I looked at the NAGPRA issues that they've raised. And as Your Honor noted, there are problems after problems after problems. So I have not thought about the question you're asking. I haven't looked at NAGPRA with that set of facts in mind. OK, that's a fair answer. Question, another different question. I just heard from the government attorney that there's no cause of action for damages, no damage remedy available under NAGPRA. Is that true? That's true. The only monetary sanction under NAGPRA is specifically penalties that can be issued against museums that are holding artifacts and that don't comply with the statute. But there's no individual cause of action for damages under NAGPRA. There's no actual discussion. That may answer a lot of this case then. There's no actual discovery of anything protected under NAGPRA. NAGPRA can't be triggered until you have an actual discovery. It's either intentional or unintentional. But there's no actual discovery even alleged. And Mr. Mez's declaration, I started to say, was part of a request for judicial notice in the trial court in this case, which the district court judge denied. So it is in their excerpts of record, but it's not in the record in this case. If you read it, I think it's helpful to our position because it explains that he's very well versed. He's been the tribe's cemetery supervisor his whole adult life. He's been the tribe's grave digger his whole adult life. He's attended and observed the scattering of ashes of personal possessions. Some members of the tribe have a custom of burning furniture and clothing of the deceased and distributing those ashes. And that's really what we're talking about here. A couple of points beyond that, if I may. And that's in the district court record, ECF-76 is the denial of the request for judicial notice. Mr. Mez's, OK. And I would just, you know, the threshold issue is not, the threshold question is, do any of these laws that provide for damage remedies apply? And to answer that question, you have to determine first what the status of the land is. They've alleged that it's not Indian trust land. That's what the complaint says. Now, I understand today they're trying to exercise parts of seven or eight different paragraphs in the complaint. I mean, I would submit the proper way to do that is with a motion for relief to amend in the district court and not in a reply brief on appeal. But none of the California laws apply if it's federal Indian trust land. The tribes were not parties to the Constitution, and so the Constitution does not apply to tribal governments, well-settled Supreme Court Ninth Circuit law. NAGPRA doesn't provide a damages remedy. This is not a museum. So even without the Rule 9, I mean, there's just no way to get there. So any amendment would be futile. The district court gave them an opportunity to amend and warned them to be specific and clear in their pleading after dismissing it under Rule 8. And what we have is this third amended complaint that's. OK, got it. Any other questions? Thank you. All right, thank you. Now, we took you over time. Let's put two minutes on the clock. Thank you, Your Honor. Mr. Warranty. First question I have for you, based on what we were hearing from the government, is there any allegation that the land in question from which the remains were allegedly removed was federal land? Yes, Your Honor. Where? The issue is in the complaint. Where? OK, I've got the complaint. Where? We have alleged the status of the land is, and we've attached copies of the deeds that shows the United States is the title owner of the property. Whether it also may be tribal land thereafter taken into trust in something is irrelevant, because NAGPRA. Wait a minute. I'm asking about the status of the land at the time of the alleged removal of the remains. Is there something in the complaint that alleges that that is federal land as distinct from trust land or fee land? Yes, Your Honor. We allege that it is owned by the federal government, and we attached Exhibit D to the complaint, which is a copy of the deed. Point me to the language where it says this is federal land rather than tribal land. Hang on one second, Your Honor. OK. In paragraph 33, it begins, defendants, quote, both intentionally and negligently breached these duties to plaintiffs by failing to protect the interests of and prevent personal injury to plaintiffs by, A, conducting and facilitating the intentional excavation, commingling, and removal of plaintiff's family human remains and funerary objects from federal or tribal lands. Mr. Lawrence's inability to answer Your Honor's question answers Ms. Snow's whole point. Ms. Snow is incorrect. Title 25, United States Code 3001 and 3002 make NAGPRA apply to both federal or tribal lands. No matter where the remains were originally interred, they're no longer there. They were removed from what started as federal lands. Is there anything more than this line on line 11 of paragraph 33 that says that these are federal lands? I believe there is a little more in paragraph 12 that survives the 12 says what the land is not, which leaves it in paragraph 33 as either federal or tribal land. It makes no difference, Your Honor. OK. Second question. Is there a cause of action for damages for improper removal of Indian remains under NAGPRA? Yes, Your Honor. And we gave you the examples in the Fallon-Paiute-Shoshone case, the Pueblo del Fuenzo case, and Quichon. Quichon is probably the best example because it adopts NAGPRA as the standard of care against a federal employer contractor who has a Quichon location down between California and Arizona. And in that case, damages were awarded under using California's per se negligence standard, finding that California's public resources code 5097.9 applies along with NAGPRA in how remains in religious sites are supposed to be treated. OK. Another question. Assuming we have a proper allegation that this is federal land, or part of it might have been federal land from which the remains were removed, doesn't that get us back to a Rule 19 issue with respect to the federal government? Not at all, because the remains have been removed. Once they've been removed from that property, now the issue is what to do about the fact that they were removed. And assuming, as Your Honor did in your question, if it was done illegally, then the damages will apply because they are not where they're supposed to be. They should have been left either in the federal land  Whichever it is, it makes no difference to us at this point in time. What matters is it was intentionally removed without going through the protocols that Your Honor has acknowledged are in NAGPRA. OK. Got it. Any further questions from the bench? Thank you. Thank you very much. Thank you very much, Your Honor. Thank both sides for their arguments. The case of Rosales v. Dutchie is submitted for decision.
judges: W. Fletcher, Bade, Moskowitz